1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONNY STEWARD,                                No.  2:16-cv-1232 GEB KJN P

12                  Plaintiff,

13          v.                                     ORDER

14   G. THUMSER, et al.,

15                  Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff seeks relief pursuant to

19   42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

20   § 1915.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.

21   § 636(b)(1).

22          Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

23   Accordingly, the request to proceed in forma pauperis is granted.

24          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.

25   28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in

26   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

27   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

28   forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

1   payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

2   These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

3   the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

4   § 1915(b)(2).

5   On June 2, 2016, plaintiff filed his original complaint.  On August 22, 2016, he filed an

6   amended complaint as of right.  Fed. R. Civ. P. 15(a).  Plaintiff's amended complaint is now

7   before the court.[1]  As more fully explained below, plaintiff's amended complaint is dismissed

8   with leave to amend.

9   II.  Screening Standards

10   The court is required to screen complaints brought by prisoners seeking relief against a

11   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

12   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

13   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

14   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

15   A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

16   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

17   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

18   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

19   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

20   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

21   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

22   2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

23   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

24   1227.

---

25

26   [1]  On August 25, 2016, another amended complaint was filed, which appears to be a photocopy of
     plaintiff's first amended complaint, with the exception that on the proof of service, plaintiff
27   changed August 11, 2016, to August 21, 2016.  (Compare ECF No. 7 at 116 to ECF No. 10 at
     116.)  Because the August 25, 2016 filing is duplicative of the August 22, 2016 filing, the court
28   strikes the second filing.

2

1    Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

2    statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

3    defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

4    Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

5    In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

6    formulaic recitation of the elements of a cause of action;" it must contain factual allegations

7    sufficient "to raise a right to relief above the speculative level." Id. at 555.  However, "[s]pecific

8    facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what

9    the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93

10   (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).

11   In reviewing a complaint under this standard, the court must accept as true the allegations of the

12   complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most

13   favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

14   grounds, Davis v. Scherer, 468 U.S. 183 (1984).

15   To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a federal

16   constitutional or statutory right; and (2) that the violation was committed by a person acting under

17   the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d

18   930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the

19   facts establish the defendant's personal involvement in the constitutional deprivation or a causal

20   connection between the defendant's wrongful conduct and the alleged constitutional deprivation.

21   See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44

22   (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable

23   for the unconstitutional conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679

24   (2009).  In sum, plaintiff must identify the particular person or persons who violated his rights.

25   III.  Plaintiff's Complaint

26   In his 116 page filing, plaintiff alleges constitutional violations arising from three discrete

27   incidents that occurred while he was housed at California Medical Facility ("CMF") in Vacaville.

28   First, plaintiff alleges that defendants Harrison and Pompey used excessive force on December

3

1    12, 2013, by deploying 7 to 8 cans of pepper spray directly into plaintiff's eyes, nose and mouth,

2    and then defendants Tapiz and Jones maliciously used hot water to decontaminate plaintiff, who

3    was blinded and choking from the pepper spray, which increased the burning in plaintiff's eyes,

4    all in violation of plaintiff's Eighth Amendment rights.  Plaintiff also contends that defendant

5    Thumsen failed to properly train the officers on the proper way to use pepper spray.  (ECF No. 7

6    at 15.)  Plaintiff claims he sustained permanent damage to his eyes.

7    Second, plaintiff challenges alleged defects in the investigation of the subsequent

8    rules violation report ("RVR"), as well as at the hearing on the rules violation.  Specifically,

9    plaintiff contends that defendant Olson fabricated the report to make it look like plaintiff

10   was the aggressor and inmate Nunez was the victim, and then recites a list of 13 prison staff who

11   plaintiff claims "were involved in fabricating evidential [sic] documentation of the altercation

12   plaintiff and inmate Nunez had on 12/12/13."  (ECF No. 7 at 8, 9.)  While not entirely clear, it

13   appears plaintiff alleges his due process rights were violated by such actions.

14   Third, plaintiff alleges that, following the altercation, while he was housed in the SHU and

15   later transferred to a different prison, a portion of his personal property was lost, stolen, or

16   misplaced, and once he arrived at Corcoran, his television was confiscated by prison staff because

17   the TV was not allowed under new prison regulations.  (ECF No. 7 at 17.)

18   IV.  Discussion

19   A.  Use of Force Incident

20   "When prison officials use excessive force against prisoners, they violate the inmates'

21   Eighth Amendment right to be free from cruel and unusual punishment."  Clement v. Gomez, 298

22   F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in

23   violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force

24   maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore

25   discipline.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In making this determination, the court

26   may evaluate (1) the need for application of force, (2) the relationship between that need and the

27   amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any

28   efforts made to temper the severity of a forceful response.  Id. at 7; see also id. at 9-10 ("The

4

1   Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

2   constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

3   of a sort repugnant to the conscience of mankind." (internal quotation marks and citations

4   omitted)).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."

5   Id. at 9.

6        Plaintiff alleges that defendants Harrison and Pompey used excessive force on December

7   12, 2013, by deploying 7 to 8 cans of pepper spray directly into plaintiff's eyes, nose and mouth,

8   permanently damaging plaintiff's eyes.  As a result, plaintiff claims he suffered significant

9   damage in breathing and his vision.  (ECF No. 7 at 11.)  Such allegations state potentially

10  cognizable excessive force claims against defendants Harrison and Pompey.  Plaintiff should

11  include such claims in any second amended complaint.

12       Also, plaintiff contends that defendant Thumsen failed to properly train the officers on the

13  proper way to use pepper spray.  (ECF No. 7 at 15.)  However, there is no respondeat superior

14  liability under 42 U.S.C. § 1983.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  For that

15  reason, Thumsen's position as warden does not make him legally responsible for the actions of

16  the staff at the prison unless a prisoner can show that the warden played some role in the

17  constitutional violation.  Taylor, 880 F.2d at 1045 (holding supervisor is "only liable for

18  constitutional violations of his subordinates if the supervisor participated in or directed the

19  violations, or knew of the violations and failed to act to prevent them.").  For example, to state a

20  claim for failure to train, a prisoner must allege facts to support a finding that the failure to train

21  amounted to deliberate indifference.  See Clement, 298 F.3d at 905;[2] Canell v. Lightner, 143 F.3d

22  _____

23  [2] In order to impose liability for failure to train, a plaintiff must establish that "in light of the
    duties assigned to specific officers or employees, the need for more or different training is

24  obvious, and the inadequacy so likely to result in violations of constitutional rights, that the
    policy-makers . . . can reasonably have been said to have been deliberately indifferent to the

25  need."  Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002). . . .  In Clement, plaintiff had set
    forth numerous instances where prison officials had used pepper spray to harm bystander inmates,

26  such that it was clear that supervisors were on "actual or constructive notice" of the need to train.
    Id.; Mixon v. Roe, 2006 WL 279296, at *1 (E.D. Cal. Feb. 6, 2006), report and recommendation

27  adopted, 2006 WL 845850 (E.D. Cal. Mar. 31, 2006), aff'd sub nom. Mixon v. Pliler, 214 F.

28  App'x 662 (9th Cir. 2006).

1210, 1213 (9th Cir. 1998).  In other words, plaintiff must allege that, not only was the training

inadequate, but that the inadequacy was the result of a deliberate or conscious choice by the

warden.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) ("Only where a failure to train

reflects a 'deliberate' or 'conscious' choice by a municipality -- a 'policy' as defined by our prior

cases -- can a city be liable for such a failure under § 1983.").

Here, unlike in Clement, plaintiff challenges one instance of an alleged excessive use of

pepper spray, and fails to demonstrate that defendant Thumsen was personally involved in such

use of force.  Moreover, it is unclear that it was the warden's duty to train correctional officers in

the use of pepper spray.  Thus, plaintiff's allegations as to Warden Thumsen fail to state a

cognizable failure to train claim.  Although it appears unlikely that plaintiff can allege facts

demonstrating liability on an alleged failure to train claim in this context, such claim is dismissed

without prejudice.

In addition, plaintiff alleges defendants Tapiz and Jones forced plaintiff to decontaminate

under hot water rather than cool water.  Specifically, plaintiff alleges that defendant Tapiz led

plaintiff, who was totally blinded at the time, to the hot water and told him to get under the water

for decontamination.  (ECF No. 7 at 5.)  Plaintiff claims that when he opened his eyes as directed,

"the pain was excruciatingly unbearable." (Id.)  Plaintiff stumbled from under the hot water, but

was led back by defendant Tapiz who said, "it's not all that hot." (Id.)  At some point, plaintiff

fell to the floor, but plaintiff was pushed back under the hot water by defendant Tapiz who said,

"come on -- I don't have all day!" (Id.)  Plaintiff asserts that defendant Tapiz insisted that this

was the proper way to decontaminate. (Id.)  Plaintiff heard another officer talking to defendant

Tapiz, and plaintiff learned it was defendant Jones replacing defendant Tapiz.  Plaintiff states that

he complained that the pepper spray burning had increased at least 50% under the hot water. (Id.)

Eventually, plaintiff pled long enough that defendant Jones let plaintiff go to the sink and rinse

his eyes. (Id.)  Plaintiff contends that the hot water "intensified the burn all over [his] body."

(ECF No. 7 at 6.)  Plaintiff declares that defendants Tapiz and Jones "maliciously used hot water

to decontaminate plaintiff while plaintiff was blinded and choking on O.C. pepper spray." (ECF

////

6

1 │ No. 7 at 3.)  Further, plaintiff asserts that prison policy dictates that prison officials must use cool

2 │ water to decontaminate inmates after the use of pepper spray.  (ECF No. 7 at 7.)

3 │      Some courts have addressed claims concerning decontamination by hot water rather than

4 │ cool water as a failure to protect claim under the Eighth Amendment.  Garcia v. Covello, 2015

5 │ WL 160673, at *8 (C.D. Cal. Jan. 12, 2015) (prisoner failed to demonstrate that using hot water

6 │ rather than cold constitutes an excessive risk of serious harm).[3]  Other courts have addressed such

7 │ claims in the context of excessive force.  See Jones v. Ryan, 2011 WL 227569 at *7 (S.D. Cal.

8 │ Jan. 24, 2011) (finding plaintiff presented no evidence of injury from decontamination with hot

9 │ water after pepper spray).

10 │      Plaintiff's allegations against defendant Tapiz appear to be sufficient to state a potentially

11 │ cognizable Eighth Amendment excessive force claim.  However, although plaintiff baldly states

12 │ that defendant Jones "maliciously" used hot water, plaintiff's allegations fail to show actions by

13 │ Jones that rise to the level of malicious.  Therefore, plaintiff is granted leave to clearly identify

---

[3]  The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The failure of a prison official to protect inmates from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met:  (1) the objective component -- the deprivation alleged must be sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and (2) the subjective component  -- the prison official must possess a sufficiently culpable state of mind.  See id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  Id. at 834 (citing Wilson, 501 U.S. at 298).  With respect to the subjective component, the requisite state of mind depends on the nature of the claim.  In prison conditions cases, the necessary state of mind is one of "deliberate indifference."  See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

"Deliberate indifference" has both subjective and objective components.  A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference."  Farmer, 511 U.S. at 837.  Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.  Deliberate indifference describes a more blameworthy state of mind than negligence.  See Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104).  Negligence is not enough to amount to an Eighth Amendment violation.  Farmer, 511 U.S. at 835.  Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk.  Id. at 836.

1    the nature of his claims against both defendants Jones and Tapiz, and to allege additional facts, if

2    he can, to demonstrate that he can state a cognizable Eighth Amendment claim against defendant

3    Jones.

4         B. <u>RVR and Hearing</u>

5         Insofar as plaintiff challenges the issuance of the RVR on grounds that it included false

6    information, plaintiff cannot state a cognizable civil rights claim.  <u>See e.g.</u>, <u>Dawson v. Beard</u>,

7    2016 WL 1137029 at *5-6 (E.D. Cal. 2016) ("The issuance of a false RVR, alone, does not state a

8    claim under section 1983."); <u>Ellis v. Foulk</u>, 2014 WL 4676530, at *2 (E.D. Cal. 2014) (noting

9    that claims of arbitrary action by prison officials are grounded in "'the procedural due process

10    requirements as set forth in <u>Wolff v. McDonnell</u> [418 U.S. 539, 556-57 (1974)]'") (quoting

11    <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)); <u>Solomon v. Meyer</u>, 2014 WL 294576, at

12    *2 (N.D. Cal. 2014) ("[T]here is no constitutionally protected right to be free from false

13    disciplinary charges.") (citing <u>Chavira v. Rankin</u>, 2012 WL 5914913, at *1 (N.D. Cal. 2012)

14    ("The Constitution demands due process, not error-free decision-making.")); <u>Johnson v. Felker</u>,

15    2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right

16    to be free from false accusations of misconduct, so the mere falsification of a [rules violation]

17    report does not give rise to a claim under section 1983.") (citing <u>Sprouse v. Babcock</u>, 870 F.2d

18    450, 452 (8th Cir. 1989), and <u>Freeman v. Rideout</u>, 808 F.2d 949, 951-53 (2d. Cir. 1986)).

19         Moreover, it appears that any due process challenge to the RVR is not properly brought

20    under 42 U.S.C. § 1983.  In <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), the Supreme Court

21    held that to recover damages for "harm caused by actions whose unlawfulness would render a

22    conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was

23    reversed, expunged, or otherwise invalidated.  <u>Id.</u>  The <u>Heck</u> bar preserves the rule that federal

24    challenges, which, if successful, would necessarily imply the invalidity of incarceration or its

25    duration, must be brought by way of petition for writ of habeas corpus, after exhausting

26    appropriate avenues of relief.  <u>Muhammad v. Close</u>, 540 U.S. 749, 750-51 (2004).  However,

27    "challenges to disciplinary proceedings are barred by <u>Heck</u> only if the § 1983 action would be

28    seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time

to be served." Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. July 26, 2016) (*en banc*), citing

Muhammad, 540 U.S. at 754-55. "If the invalidity of the disciplinary proceedings, and therefore

the restoration of good-time credits, would not necessarily affect the length of time to be served,

then the claim falls outside the core of habeas and may be brought in § 1983." Id.; see, e.g., Pratt

v. Hedrick, 2015 WL 3880383, *3 (N.D. Cal. June 23, 2015) (§ 1983 challenge to disciplinary

conviction not Heck-barred where "the removal of the rule violation report or the restoration of

time credits" would not necessarily result in a speedier release for inmate with indeterminate life

sentence and no parole date).

　　　　Specifically, where the claim involves the loss of good-time credits as a result of an

adverse prison disciplinary finding, the claim is not cognizable. See Edwards v. Balisok, 520

U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural

defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary

sanction of loss of good-time credits); cf. Ramirez v. Galaza, 334 F.3d 850, 858 (9th. Cir. 2003)

(holding that the favorable termination rule of Heck and Edwards does not apply to challenges to

prison disciplinary hearings where the administrative sanction imposed does not affect the overall

length of confinement and, thus, does not go to the heart of habeas), cert. denied, 541 U.S. 1063

(2004); see also Wilkerson v. Wheeler, 772 F.3d 834 (9th Cir. 2014) (discussing loss of good-

time credits); Nettles v. Grounds, 788 F.3d 992 (9th Cir. 2015) (discussing loss of good-time

credits). If a § 1983 complaint states claims which sound in habeas, the court should not convert

the complaint into a habeas petition. See id.; Trimble v. City of Santa Rosas, 49 F.3d 583, 586

(9th Cir. 1995). Rather, such claims must be dismissed without prejudice and the complaint

should proceed on any remaining cognizable § 1983 claims. See Balisok, 520 U.S. at 649; Heck,

512 U.S. at 487; Trimble, 49 F.3d at 585.

　　　　Here, plaintiff alleges that he was subjected to a disciplinary proceeding that was based on

false information, and that was not properly investigated or reviewed. It is unclear whether

plaintiff can allege facts demonstrating that his due process rights were violated based on the

limited due process rights required in the prison disciplinary context. Wolff, 418 U.S. at 571.[4]

---

[4] In prison disciplinary proceedings, an inmate is not entitled to the full panoply of due process

1    However, the exhibits appended to the amended complaint confirm that plaintiff suffered the loss

2    of 90 days of behavioral credits.  (ECF No. 7 at 75.)  Because plaintiff seeks money damages, his

3    challenge to the disciplinary proceeding is barred by the favorable termination rule of Heck

4    because a judgment in favor of plaintiff on his claim will necessarily imply the invalidity of the

5    disciplinary action, and plaintiff has not demonstrated that the disciplinary action has been

6    "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

7    authorized to make such determination, or called into question by a federal court's issuance of a

8    writ of habeas corpus."  See e.g., Cox v. Clark, 321 Fed. App'x 673, 676 (9th Cir. 2009)

9    (affirming dismissal of due process claim pursuant to Balisok to the extent that plaintiff sought

10   restoration of good-time credits and the reversal of a disciplinary decision); McCoy v. Spidle,

11   2009 WL 1287872, *7-*8 (E.D. Cal. May 6, 2009) ("A challenge under section 1983, seeking

12   only damages and declaratory relief for procedural due process violations is also barred if the

13   nature of the challenge would necessarily imply the invalidity of the deprivation of good-time

14   credits.").

15          Therefore, to the extent plaintiff asserts that he was deprived of a constitutionally-

16   protected liberty interest because prison officials imposed discipline that caused him to lose time

17   credits and extended his stay in prison, he may have a due process claim, but would need to assert

18   such a claim in a petition for writ of habeas corpus rather than a civil rights complaint.

19   ////

20   _____

21   rights that apply to traditional criminal cases.  Wolff, 418 U.S. at 556.  Rather, due process
     requires that the prisoner receive:  (1) written notice of the charges; (2) at least 24 hours between
22   the time the prisoner receives written notice and the time of the hearing, so that the prisoner may
     prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and
23   reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present
     documentary evidence in his defense, when permitting him to do so would not be unduly
24   hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner
     where the prisoner is illiterate or the issues presented are legally complex.  Wolff, 418 U.S. at
25   563-71.  The disciplinary hearing must be conducted by a person or body that is "sufficiently
     impartial to satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.  Finally, the decision
26   rendered on a disciplinary charge must be supported by "some evidence" in the record.
     Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The "some evidence" standard is "minimally
27   stringent," and a decision must be upheld if there is any reliable evidence in the record that could
     support the conclusion reached by the fact finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.
28   1994) (citing Hill, 472 U.S. at 455-56, and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).

C. <u>Property Claims</u>

Plaintiff challenges the loss and confiscation of certain items of personal property.

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. <u>Piatt v. McDougall</u>, 773 F.2d 1032, 1036 (9th Cir. 1985); <u>see also</u> <u>Knudson v. City of Ellensburg</u>, 832 F.2d 1142, 1149 (9th Cir. 1987).

In the instant case, plaintiff has not alleged any facts which suggest that the first deprivation of property was authorized. The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, <u>et seq.</u> Because plaintiff has not attempted to seek redress in the state system, he cannot sue in federal court on the claim that the state deprived him of property without due process of the law. The court concludes that this claim must, therefore, be dismissed as frivolous. <u>See</u> 28 U.S.C. § 1915(e)(2).

With regard to plaintiff's claim that prison staff at Corcoran confiscated plaintiff's television based on new prison regulations, such claim is not related to his claim of excessive force used at CMF. Thus, plaintiff must pursue such unrelated claim in a separate complaint filed in the Fresno Division of the Eastern District, as further explained below.

On the table of contents page, plaintiff states that deprivation or limitation of property in retaliation for exercise of constitutional rights is unconstitutional. (ECF No. 7 at 23.) However, plaintiff fails to provide factual allegations to support a retaliation claim.

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

1  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct protected by the First

2  Amendment includes communications that are "part of the grievance process."  Brodheim v. Cry,

3  584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  If plaintiff intends to assert a retaliation claim, he must

4  specifically identify the protected conduct at issue, name the defendant who took adverse action

5  against him, and plead that the allegedly adverse action was taken "because of" plaintiff's

6  protected conduct.

7          Plaintiff recounts his myriad efforts to exhaust his administrative remedies as to his

8  missing property, but he fails to provide factual allegations demonstrating a retaliatory motive in

9  connection with his lost property, and fails to address each of the Rhodes elements.  (ECF No. 7

10  at 29-40.)  Plaintiff does not specifically identify a defendant who intentionally deprived plaintiff

11  of his personal property in retaliation for plaintiff's conduct protected under the First

12  Amendment.  Moreover, even if plaintiff can allege facts demonstrating that a defendant

13  retaliated against plaintiff for such protected conduct, he must bring such claims in a separate

14  action because they are unrelated to plaintiff's alleged excessive force claims.

15          D.  Unrelated Claims Must be Brought in Separate Actions

16          As noted above, some of plaintiff's claims are not properly joined under Federal Rule of

17  Civil Procedure 20(a) concerning joinder of claims and defendants.  Rule 20(a) provides that all

18  persons may be joined in one action as defendants if "any right to relief is asserted against them

19  jointly, severally, or in the alternative with respect to or arising out of the same transaction,

20  occurrence, or series of transactions or occurrences" and "any question of law or fact common to

21  all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

22          Here, the acts or omissions giving rise to plaintiff's claims were not part of the same

23  transaction, occurrence or series of transactions or occurrences.  Also, the claim concerning

24  property is against an entirely different set of defendants.[5]  Plaintiff's claims concerning property

25  and retaliation are severed from this action because they do not (a) arise out of the same

26

27  _____

   [5] Plaintiff confirms that the defendant Jones who was involved in the decontamination claim is
   different from the defendant Jones named in connection with the loss of property allegation.
28  (ECF No. 7 at 14.)

1   transaction, occurrence, or series of transactions or occurrences and (b) present questions of law

2   or fact common to all defendants.  Such severed claims may continue in a separate suit if

3   promptly initiated by plaintiff.  See DirecTV, Inc. v. Leto, 467 F.3d 842, 846 (3d Cir. 2006)

4   (claims that are severed rather than dismissed may continue in a separate suit so that they will not

5   be time-barred).

6       E.  Brevity

7       Finally, in his 116 page pleading, plaintiff names 16 defendants, and his 40 page amended

8   complaint includes numerous allegations extraneous to any claims for relief, including

9   discussions about life in prison, his efforts to exhaust his administrative remedies,[6] and his

10  personal life history.  (ECF No. 7 at 24, 26-27, 29-31; 34-37, 39.)[7]  The federal rules contemplate

11  brevity.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that

12  "nearly all of the circuits have now disapproved any heightened pleading standard in cases other

13  than those governed by Rule 9(b)."); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare

14  exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms,

15  simply, concisely and directly.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)

16  ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus

17  litigation on the merits of a claim."); Fed. R. Civ. P. 8.  Plaintiff must eliminate from his amended

18  pleading all preambles, introductions, argument, speeches, explanations, stories, griping,

19  vouching, evidence, attempts to negate possible defenses, summaries, and the like.  McHenry v.

20  Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation

21  of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that

22  "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases).

23  ───────────

[6] Plaintiff is required to exhaust all available administrative remedies prior to filing his claims in
24  federal court.  42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001).  However,
failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones v. Bock,
25  549 U.S. 199, 204, 216 (2007).  Thus, plaintiff is not required to demonstrate, in his complaint,
that such remedies were unavailable, or that his efforts to exhaust were impeded.

26
[7] Plaintiff also asks the court to order a polygraph examination.  The court is not authorized to
27  order parties to submit to polygraph examinations.  In addition, "polygraph exams are generally
deemed unreliable as evidence."  Toussaint v. McCarthy, 926 F.2d 800, 805 (9th Cir. 1990),
28  citing see People v. Miller, 208 Cal. App. 3d 1311, 1314 (1989) (collecting cases).

13

1  The court (and defendants) should be able to read and understand plaintiff's pleading within

2  minutes.  McHenry, 84 F.3d at 1177.  A long, rambling pleading, including many defendants with

3  unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a

4  series of unrelated claims against many defendants very likely will result in delaying the review

5  required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ.

6  P. 41 for violation of these instructions.  The court finds that plaintiff's amended complaint does

7  not contain a short and plain statement of his claims as required by Fed. R. Civ. P. 8(a)(2).

8  V.  Leave to Amend

9        Therefore, plaintiff's amended complaint is dismissed.  The court, however, grants leave

10  to file an amended complaint.  Plaintiff is granted leave to file an amended complaint that seeks

11  to adequately allege the following claims:  Eighth Amendment excessive force claims against

12  defendants Harrison and Pompey, defendant Thumsen's alleged failure to train officers Harrison

13  and Pompey on the use of pepper spray, and Eighth Amendment claims against defendants Tapiz

14  and Jones based on their use of hot water in the decontamination process.  As discussed above,

15  plaintiff must raise any other, unrelated claims in separate actions.

16        If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

17  about which he complains resulted in a deprivation of plaintiff's constitutional rights.  Rizzo v.

18  Goode, 423 U.S. 362, 371 (1976).  Also, the complaint must allege in specific terms how each

19  named defendant is involved.  Id.  There can be no liability under 42 U.S.C. § 1983 unless there is

20  some affirmative link or connection between a defendant's actions and the claimed deprivation.

21  Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743

22  (9th Cir. 1978).  Furthermore, vague and conclusory allegations of official participation in civil

23  rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

24  ////

25  ////

26  ////

27  ////

28

1    Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[8]  See

2    Fed. R. Civ. P. 20(a)(2).

3    In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

4    make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

5    complaint be complete in itself without reference to any prior pleading.  This requirement exists

6    because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v.

7    Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original

8    pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an

9    original complaint, each claim and the involvement of each defendant must be sufficiently

10   alleged.

11   Finally, the court has revised the form for filing a civil rights complaint by a prisoner.

12   Because plaintiff's amended complaint was unduly long, plaintiff is required to file any second

13   amended complaint on the form used by this district.  In addition, plaintiff's amended pleading is

14   limited to 20 pages.  Plaintiff shall not exceed the page limit and shall not append exhibits to his

15   amended pleading.  The court and any party may refer to the exhibits plaintiff previously

16   provided.  (ECF No. 7.)  Failure to comply with this order will result in the dismissal of this

17   action.

18   In accordance with the above, IT IS HEREBY ORDERED that:

19   1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

20   2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

21   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §1915(b)(1).

22
_____

[8]  A plaintiff may properly assert multiple claims against a single defendant.  Fed. Rule Civ. P.
23   18.  In addition, a plaintiff may join multiple defendants in one action where "any right to relief is
     asserted against them jointly, severally, or in the alternative with respect to or arising out of the
24   same transaction, occurrence, or series of transactions and occurrences" and "any question of law
     or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Unrelated
25   claims against different defendants must be pursued in separate lawsuits.  See George v. Smith,
     507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only to prevent the sort of morass [a
26   multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the
     required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous
27   suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C.
     § 1915(g)."  George, 507 F.3d at 607.

28

1  All fees shall be collected and paid in accordance with this court's order to the Director of the

2  California Department of Corrections and Rehabilitation filed concurrently herewith.

3      3.  Plaintiff's second amended complaint (ECF No. 10) is stricken.

4      4.  Plaintiff's amended complaint (ECF No. 7) is dismissed.

5      5.  Within thirty days from the date of this order, plaintiff shall complete the attached

6  Notice of Amendment and submit the following documents to the court:

7          a.  The completed Notice of Amendment; and

8          b.  An original and one copy of the Second Amended Complaint.

9  Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act,

10  the Federal Rules of Civil Procedure, and the Local Rules of Practice, and may not exceed 20

11  pages in length.  The second amended complaint must also bear the docket number assigned to

12  this case and must be labeled "Second Amended Complaint."

13      Failure to file an amended complaint in accordance with this order may result in the

14  dismissal of this action.

15      6.  The Clerk of the Court is directed to send plaintiff two forms for filing a civil rights

16  complaint by a prisoner, a petition for writ of habeas corpus, and two applications to proceed in

17  forma pauperis by a prisoner.

18  Dated:  October 20, 2016

19

20  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

21  stew1232.14

22

23

24

25

26

27

28

16

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONNY STEWARD,                           No.  2:16-cv-1232 GEB KJN P

12                Plaintiff,

13        v.                                  NOTICE OF AMENDMENT

14   G. THUMSER, et al.,

15                Defendants.

16

17       Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19            _____          Second Amended Complaint (must be on court's

20   DATED:                          form and shall not exceed 20 pages)

21

22                                   _____

23                                   Plaintiff

24

25

26

27

28